IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | NO.  2:12-CR-022-RWS-JCF |
| | : | |
| JOSUE GUERRERO, DAVID RIZO- | : | |
| TRONCOSO, and JESSI CASTILLO | : | |

## REPORT AND RECOMMENDATION

This case is before the Court on the Motions to Dismiss Indictment filed by

Defendants Jessi Castillo (Doc. 216), David Rizo-Troncoso (Doc. 241), and Josue

Guerrero (Doc. 246).  Defendants move to dismiss the Superseding Indictment due

to outrageous Government conduct that allegedly violated their due process rights,

and because the Superseding Indictment fails to charge them with a crime. They

also request that the Court conduct a hearing on their motions.  As Defendants

have not shown that the governmental involvement here was so outrageous that

dismissal would be justified, or that the Superseding Indictment fails to charge

them with a crime, it is **RECOMMENDED** that Defendants' motions be

**DENIED** without a hearing.

## Background

An Indictment filed August 14, 2012 (Doc. 1) charged Defendants Davey

Honeycutt, Brandon Musser, Thomas Coley, Phillip Honeycutt, and Phillip

1

Alexander with conspiring to aid and abet, and/or aiding and abetting "Michael

Griffin, a/k/a Griff," in the possession or attempted possession of cocaine with

intent to distribute on specified dates.  On January 16, 2013, the Government filed

a Superseding Indictment.  (Doc. 154).  Count Three of the Superseding Indictment

now charges Defendants Musser, Phillip Honeycutt, Alexander, Coley, Gregorio

de la Paz, Josue Guerrero, David Rizo-Troncoso, and Jessi Castillo with conspiring

with each other from July 11, 2012 until July 19, 2012 to aid and abet "Griff," in

the possession of cocaine with intent to distribute.  Count Four charges Musser,

Phillip Honeycutt, Alexander, de la Paz, Guerrero, and Rizo-Troncoso with aiding

and abetting "Griff" in attempting to possess cocaine with intent to distribute on

July 11, 2012.  Count Five charges Coley, Guerrero, Rizo-Troncoso, and Castillo

with aiding and abetting "Griff" in attempting to possess cocaine with intent to

distribute on July 19, 2012.  Defendant Guerrero is also charged with possession of

a firearm by a convicted felon (Count Six).  Movants are not charged with offenses

in Counts One, Two, Seven, and Eight of the Superseding Indictment.

The Government represents that these charges resulted from "a two year

undercover investigation conducted by the FBI into the criminal activities of the

Outlaw Motorcycle Club (OMC), the Surenos, a/k/a 'SUR-13,' and their respective

affiliated gangs in North Georgia."  (Doc. 255 at 1-2).  The Government further

proffers:

The FBI, through the use of an undercover agent and cooperating individuals, including confidential informants, developed evidence that members and associates of the OMC, SUR-13, and their respective affiliated gangs were involved in illegal drug and firearms trafficking which led to multiple indictments being returned by the grand jury.

Brad Smith ["Smith"], the then-President of the Black Pistons Motorcycle Club's Cleveland, Georgia chapter, an OMC-affiliated gang, was working as an FBI confidential informant. Smith introduced an undercover law enforcement officer ["Griff" or "Griffin"] to the motorcycle gang community in North Georgia. Griff posed as Smith's long-time friend and a large-scale drug dealer from Florida who was looking to expand his drug trafficking business into North Georgia and Tennessee. The FBI's investigation included using Smith and Griff to record conversations with targets concerning their criminal activities; Griff purchasing and attempting to purchase illegal drugs and firearms; and Griff paying members and associates of OMC and its affiliated gangs to provide protection for both real and sham drug deals.

Nick Falcon, a/k/a "Stomper," . . . who was at that time a member of SUR-13, was also working as an FBI confidential informant. Stomper introduced Griff to known drug dealers in the Gainesville, Georgia area who were also known to be associates of SUR-13. The FBI's investigation included using Stomper and Griff to record conversations with targets concerning their criminal activities; Stomper and Griff purchasing and attempting to purchase illegal drugs and firearms; and Griff paying members and associates of SUR-13 and its affiliated gangs to provide protection for ruse drug deals.

(*Id.* at 2-3).

On February 21, 2013, Defendant Castillo filed the pending motion to dismiss. (Doc. 216). Defendant Guerrero filed a motion to dismiss on March 5, 2013. (Doc. 246). The Government filed a response to Defendants' motions on March 20, 2013 (Doc. 255), and Defendants Castillo and Guerrero filed reply briefs on March 29, 2013 and April 2, 2013 respectively (Docs. 258, 262). The

Court granted the Government's motion to file a sur-reply (*see* Doc. 264), and the

Government filed its sur-reply on April 16, 2013 (Doc. 272).  Briefing is now

complete, and the Court turns to the merits of Defendants' motions.

## Discussion

### I.     The Government's Allegedly Outrageous Conduct

#### A.     Over-involvement in Charged Offenses

Defendants contend that "[w]hen involvement by federal agents in the

commission of a crime is so outrageous as to shock the conscience, either due

process or the Court's supervisory powers will preclude prosecution."  (*See* Doc.

246 at 7; *see also* Doc. 216 at 3).  They seek dismissal of the Superseding

Indictment by invoking a defense that has been recognized, but apparently never

applied within this Circuit.  In *United States v. Haimowitz*, 725 F.2d 1561 (11th

Cir. 1984), the court wrote, "In *United States v. Russell*, 411 U.S. 423 [] (1973),

the Supreme Court recognized outrageous governmental conduct as a legal

defense." 725 F.2d 1561, 1577 (11th Cir. 1984).  In *Russell*, the Court explained,

"While we may *some day* be presented with a situation in which the conduct of law

enforcement agents is so outrageous that due process principles would absolutely

bar the government from invoking judicial processes to obtain a conviction, the

instant case is distinctly not of that breed." *United States v. Russell*, 411 U.S. 423,

431-32 (1973)(emphasis added).  The Court found that the government agent's

conduct in that case, supplying the defendant with materials to make methamphetamine, "stop[ped] short of violating that fundamental fairness, shocking to the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment." *Id.* at 432 (quotation omitted). Therefore, while the Supreme Court in *Russell* left open the possibility that an outrageous governmental conduct defense might be recognized *some day*, it did not apply such a defense in that case.

Within this Circuit more recently, in *United States v. Jayyousi*, 657 F.3d 1085 (11th Cir. 2011), the court explained that the Eleventh Circuit had "never applied the outrageous government conduct defense and ha[d] discussed it only in dicta," and pointed out that several other circuits "have either rejected this defense completely" or "have been sharply critical of the defense," thus casting doubt on its continued viability. *Id.* at 1111; *see also United States v. Galvis-Pena*, No. 1:09-CR-25-TCB-CCH-4, 2011 U.S. Dist. LEXIS 153045, at *32-33 (N.D. Ga. Dec. 6, 2011) ("Indeed, the Eleventh Circuit has never found that a case should have been dismissed on the ground of outrageous governmental conduct." (citing Donald F. Samuel, *Eleventh Circuit Criminal Handbook* § 87 at 4-7 (2011 Ed.) (claim may at least still be "theoretically possible")), *adopted by* 2012 U.S. Dist. LEXIS 16239 (N.D. Ga. Feb. 9, 2012).

"To succeed under this defense, the defendant must show that the challenged governmental conduct violated that fundamental fairness, shocking to the universal sense of justice, mandated by the due process clause of the fifth amendment." *Haimowitz*, 725 F.2d at 1577 (quotation omitted)). "Whether outrageous governmental conduct exists turns upon the totality of the circumstances with no single factor controlling[,] and the defense can only be invoked in the rarest and most outrageous circumstances." *Id.* (quotations omitted). "Although federal courts possess the authority to dismiss an indictment for governmental misconduct, dismissal is an extreme sanction which should be infrequently utilized[, and d]ismissal is only favored in the most egregious cases." *United States v. Michael*, 17 F.3d 1383, 1386 (11th Cir. 1994) (quotations omitted).

Defendants contend that sufficient outrageousness to warrant dismissal of the indictment can be shown where "the government instigates the criminal activity, provides the entire means for its execution, and runs the operation with only meager assistance from the defendant," which, they argue describes the events underlying this prosecution. (*See* Doc. 216 at 3, 5; Doc. 246 at 7, 10). Specifically, Defendant Castillo contends that "at the urging of law enforcement officers, one of [his] co-defendants contacted Mr. Castillo and asked him to provide security for a meeting to be led by Mr. Griffin," and that Castillo "was told to stand at a certain location and observe oncoming traffic," but "[a]t no point did

Mr. Castillo have any contact, visual or physical, with any actual cocaine or any sham cocaine." (Doc. 216 at 2). He argues that he

> did not instigate any criminal activity and did not provide even "meager assistance," to any of the parties. [His] involvement was the result of pre-selection by government agents. [He] displayed no indications of prior disposition to commit any crime. His selection was determined prior to any act that may be deemed a criminal activity. At no point during the sham transaction did [he] come into contact with any illegal substance. The government agents provided all of the equipment, know-how, and opportunity, without which [he] would not have engaged in any criminal activity.

(*Id.* at 5). Defendant Guerrero asserts that he became friends with "Stomper," a confidential source in this case, while they were both incarcerated in the Hall County jail; that they continued their friendship after both were released; that Stomper told Guerrero he was a member of Sur-13 and under orders by a gang member in prison to assist member of the Outlaws; that Stomper asked Guerrero "if he would like to make some fast money acting as a lookout for the bikers"; that Guerrero "agreed to do so," and on at least two occasions, Defendant acted as "lookout" for ruse cocaine transactions "conducted entirely by law enforcement" in exchange for $200, half of which he had to give back to Stomper as a "secret kickback"; and Defendant also sold a firearm to Griffin "at the request of Stomper." (Doc. 246 at 2-3). Guerrero further asserts that "[t]his was the first occasion [he] had ever been involved in any activity of this nature, his previous involvement with narcotics being limited to personal use of small quantities of

marijuana." (*Id.*). Guerrero contends that "the Government, through their informant, did select and target Mr. Guerrero" to "stand watch over" transactions between agents and informants "pretending to undertake criminal activity." (*Id.* at 10).

The Government counters that it "merely provided Defendants with the opportunity to participate in criminal activity of which the Defendants were more than willing to take advantage," and that "Defendants have not demonstrated that the Government coerced, pressured, or misled them to participate in the drug or firearms transactions with which they are charged." (Doc. 255 at 18). The Government argues that "[b]ased on the totality of the circumstances, the Government's conduct in this investigation falls short of the extremely shocking and outrageous conduct that would be necessary to establish a due process violation and to warrant dismissal of the indictment." (*Id.* at 18-19).

Specifically, the Government proffers the following as to Defendants' involvement in the crimes charged in the Superseding Indictment: Defendant Guerrero and Stomper became friends while incarcerated together in early 2012; Guerrero knew that Stomper was a member of SUR-13, and Guerrero told Stomper that he "used to hang out with "COG," a SUR-13 gang. (*Id.* at 13). After they were released, Guerrero told Stomper "that he and others were selling guns and that he could get guns," and that "he had started to sell cocaine," and Stomper

observed Guerrero use cocaine. (*Id.*). Sometime prior to the July 11, 2012 transaction, Stomper told Defendants Guerrero and Rizo-Troncoso that he was working with "the Outlaws" or "the bikers," and told them that his "biker dude" ("Griff") "wanted protection for multi-kilogram drug deals and was willing to pay $200 to each person for their assistance," and that Griff would also buy any guns they had to sell. (*Id.* at 13-14). According to the Government, each Defendant was "eager to participate, and told Stomper something to the effect of 'let's go, I'm down' and asked Stomper when his biker dude was coming to town so 'I can make some money.' " (*Id.* at 14). Pursuant to Stomper's request, Rizo-Troncoso also recruited Defendant de la Paz to participate; de la Paz "brought a gun and gave it to Defendant Rizo-Troncoso . . ., who planned to sell the gun to the 'biker dude' at the deal." (*Id.*). At the July 11, 2012 transaction, Griff explained to Defendants "that they were needed to act as law enforcement lookouts and as security for him while he took possession of '15 bricks,' " and they "stood at their assigned posts, as instructed." (*Id.* at 14-15). After the transaction, Rizo-Troncoso sold Griff a semi-automatic pistol. (*Id.* at 15). Rizo-Troncoso also "told Griff to let him know 'if you got more business.' " (*Id.*). After the July 11, 2012 transaction, Rizo-Troncoso and Guerrero "emphasized to Stomper to let them know when he heard back from his 'biker dude' about when the next deal was going down because they wanted in on the deal." (*Id.* at 16). Stomper asked them to participate in the July

19, 2012 transaction, and to recruit "other guys from the 'hood.' " (*Id.*). Guerrero

then recruited Defendant Castillo to participate in the deal.  (*Id.*).   Before the

transaction, Griff told Rizo-Troncoso, Guerrero, and Castillo "that he had '5

bricks' coming in, and that this deal was a completion of the prior deal on July 11,"

and during the transaction, they "stood watch at their assigned posts, as instructed."

(*Id.* at 17).   Sometime later, Guerrero asked Stomper to take him to a location to

find a gun he wanted to sell to Griff, and Stomper did so.  (*Id.* at 17-18).   On July

20, 2012, Guerrero sold a pistol and ammunition to Griff.  (*Id.* at 18).

The undersigned finds that the challenged governmental conduct does not

rise to the level of offending notions of fundamental fairness and is not shocking to

the universal sense of justice, and therefore it does not violate Defendants' Fifth

Amendment due process rights.  "[G]overnment infiltration of criminal activity is a

recognized and permissible means of investigation, even though the government

agent supplies something of value to the criminal." *United States v. Tobias*, 662

F.2d 381, 386 (5th Cir. 1981)[1] (internal quotations omitted).   In particular,

"[w]here the government is investigating offenses involving illegal drugs, it often

must engage in undercover operations because it is very difficult to discover the

contraband.   This activity by the government does not generally constitute

---

[1] Decisions of the Fifth Circuit handed down before Oct. 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

outrageous conduct." *United States v. Lopez-Cruz*, 170 Fed. Appx. 634, 636 (11th Cir. 2006) (unpublished decision); *see also United States v. Sanchez*, 138 F.3d 1410, 1413 (11th Cir. 1998) ("The fact that government agents may supply or sell illegal drugs or provide other essential services does not necessarily constitute misconduct."). Furthermore, "[w]here the government merely presents a defendant with a routine criminal opportunity of which the defendant is more than willing to take advantage, the government's actions do not amount to outrageous conduct warranting dismissal." *United States v. Rolon*, 445 Fed. Appx. 314, 322 (11th Cir. 2011) (unpublished decision).

A closer look at one leading case illustrates how remarkably difficult it is to show that government misconduct is outrageous enough to justify dismissal. In *Tobias*, Drug Enforcement Administration ("DEA") agents established a chemical supply company; agents placed an advertisement in High Times Magazine offering to sell chemicals and laboratory equipment to manufacture drugs; agents recommended to the defendant that he make Phencyclidene (PCP) because it was easier to make than cocaine; agents gave the defendant the formula and some of the chemicals necessary to make the drug; and agents provided ongoing advice on how to make PCP. *Tobias*, 662 F.2d at 383-84. The court found that the government conduct in that case "set[s] the outer limits to which the government may go in the quest to ferret out and prosecute crimes in this circuit," yet because

11

the defendant "was a predisposed active participant, motivated solely by a desire to make money," the court found that the conduct was not so outrageous to constitute a due process violation. *Id.* at 387.

In this case, Defendants have not demonstrated that Government agents coerced, pressured, or misled them to engage in criminal activity in which they were not otherwise predisposed to engage, nor have they otherwise shown that the governmental conduct was so outrageous that it violated their due process rights. As described above, the Government has proffered that at least some of the Defendants were recruited by other Defendants, not a Government agent, and that Defendants were willing to engage in drug and gun-related transactions, including arranging and/or securing transactions and selling firearms, and that they agreed to participate in the transactions alleged in the Superseding Indictment.

Furthermore, Defendants have not shown that they are entitled to a hearing on their motions. "[W]ithout sufficient factual allegations to support an outrageous-governmental-conduct defense, the Court need not hold an evidentiary hearing on the issue." *Galvis-Pena*, 2012 U.S. Dist. LEXIS 16239, at *16 (citing *United States v. Holloway*, 778 F.2d 653, 658 (11th Cir. 1985). Moreover, Defendants' contentions about the agents' conduct in this case "raise questions that are intermeshed with questions going to the merits of the case because they would require proof of the criminal conduct alleged in the indictment," and therefore,

12

"they are not capable of resolution without a 'trial of the general issue' under FED. R. CRIM. P. 12(b)(2)." *Id.*[2] Thus, a pretrial evidentiary hearing on Defendants' motions would be inappropriate. *See, e.g. id.* at \*15-16 (finding that magistrate judge properly denied the defendant's request for an evidentiary hearing on his motion to dismiss for outrageous governmental conduct because he had not made a sufficient showing of outrageousness to warrant a hearing, and a hearing would require a "trial of the general issue," i.e., proof of the underlying criminal conduct alleged in the indictment).

Accordingly, it is **RECOMMENDED** that Defendants' motions to dismiss the Superseding Indictment on the grounds of governmental over-involvement in the charged offenses be **DENIED** without a hearing.

## B.  Post-Indictment Questioning of Defendant Castillo

In his reply brief (Doc. 258), Defendant Castillo argues for the first time that the Superseding Indictment should be dismissed because agents questioned him on February 1, 2013, after he had been indicted, and in spite of his invocation of his right to counsel. The Court need not reach the issue of whether the agents acted

---

[2] Rule 12(b)(2) provides that "[a] party may raise by *pretrial* motion any defense, objection, or request that the court can determine *without a trial of the general issue*." FED. R. CRIM. P. 12(b)(2) (emphasis added). As the court pointed out in *Galvis-Pena*, because "the issue of outrageous governmental conduct remains a question of law for the Court to decide," Defendants "will be permitted to move for dismissal *at trial* should the evidence establish this defense." 2012 U.S. Dist. LEXIS 16239, at \*17 n. 6 (emphasis added).

improperly in questioning Defendant on February 1, 2013, because Defendant has not shown that dismissal of the Superseding Indictment is the appropriate remedy where he has failed to show that the agents' actions prejudiced him. *See United States v. Accenturo*, 858 F.2d 679, 682 (11th Cir. 1988) ("[D]istrict courts may exercise their discretionary powers to dismiss an indictment on grounds of prosecutorial misconduct when a sufficient showing of prejudice has been made."). Defendant has not shown that the charges against him resulted from the alleged misconduct. Defendant has not challenged the Government's assertion that it does not intend to use against Defendant any statements made during that questioning (*see* Doc. 272 at 6), nor has he sought to suppress any such statements. Nor has he shown that he provided agents with any information helpful to the prosecution of the charges against him. In fact, he asserts that he "adamantly denied having any information the agents were seeking." (Doc. 258 at 4). Further, his contention that he "could easily have been unfairly prejudiced in these circumstances" (Doc. 258 at 5) shows he was at most theoretically, but not *actually*, prejudiced.

Accordingly, because Defendant has not shown that the agents' alleged conduct prejudiced him, it is **RECOMMENDED** that Defendant Castillo's motion to dismiss the indictment based on the February 1, 2013 interview be **DENIED**. *See Accenturo*, 858 F.2d at 681 (explaining that "prejudice to the defendant is an essential element when a criminal defendant seeks dismissal of an indictment due

to prosecutorial misconduct," and finding that charge should not have been dismissed where the defendant had "not shown sufficient prejudice to warrant dismissal" (quotation omitted)).

## II.   Superseding Indictment's Alleged Failure to Charge a Crime

Defendant Castillo argues that "[t]he facts of the government's theory reveal that no crime has been committed by [him]." (Doc. 216 at 1). Castillo contends that "[t]he law is clear that one cannot be in conspiracy with a government agent in these circumstances," citing *United States v. Arbane*, 446 F.3d 1223 (11th Cir. 2006), and "because Mr. Griffin was working as an undercover FBI agent at the time he handled any sham cocaine, he was not committing a crime." (*Id.* at 2-3). Therefore, Castillo argues, he "could not have been in a conspiracy with [Griffin] to commit a crime." (*Id.* at 3). Castillo also argues that no crime occurred, "only attempts to manufacture crimes existed." (*Id.*).

Defendant Guerrero similarly argues that "[t]he facts of the case are insufficient to support charges on Counts 3, 4, and 5." (Doc. 246 at 5). With respect to Count 3, Guerrero also cites *Arbane* for the proposition that "[a] government agent or informant is not a culpable conspirator," and asserts that his "only agreement was with the person who recruited him, Stomper, a confidential informant," or possibly with Griffin, the undercover agent. (*Id.*). Therefore, Defendant argues, he "had no agreement with a culpable conspirator and . . .

cannot be guilty of conspiracy." (*Id.*). With respect to Counts 4 and 5, Guerrero contends that because "there were no actual drugs or any intent to possess narcotic[s] or sell any narcotics to anyone," Griffin, an undercover agent, "could not have intended to distribute [narcotics]," and Griffin "did not tell Mr. Guerrero that he intended to do so." (*Id.* at 6-7). Therefore, Defendant argues, he cannot be found guilty of aiding and abetting Griffin to possess cocaine with the intent to distribute. (*Id.* at 6-7).

Defendants' contentions provide no basis for dismissal of the charges against them at this stage. In the first place, to the extent that Defendants challenge the sufficiency of the evidence against them, "[a] district court may not dismiss an indictment prior to trial on grounds of insufficiency of evidence." *United States v. Salgado*, No. 1:10cr251-TWT-AJB-08, 2012 U.S. Dist. LEXIS 81502, at *8 (N.D. Ga. Mar. 20, 2012). To the extent that Defendants argue that the indictment is deficient because it fails to charge a crime against them, "[a]n indictment is valid if it contains the elements of the offense intended to be charged." *United States v. Williams*, 181 Fed. Appx. 945, 949 (11th Cir. 2006) (unpublished decision) (quotation omitted). The undersigned finds that the Superseding Indictment properly sets forth the elements of the charged offenses.

With respect to Count 3, the conspiracy count, the Superseding Indictment charges Defendants with knowingly conspiring with each other to violate 21

16

U.S.C. § 841(a), i.e., to aid and abet "Griff" in the knowing possession with intent to distribute cocaine, from July 11, 2012 through July 19, 2012. This charge is sufficient because it identified the co-conspirators, tracked the elements of the statutes, and "stated the estimated time span of the conspiracy[.]" *Williams*, 181 Fed. Appx. at 949. To the extent that Defendants move to dismiss Count 3 on the ground that they cannot be charged with conspiring with a government agent, their reliance on *Arbane* is misplaced. The court in *Arbane* stated "[i]f there are *only two members of a conspiracy*, neither may be a government agent or informant who aims to frustrate the conspiracy." 446 F.3d at 1228 (emphasis added). But in this case, there are more than two charged members of the conspiracy, and Count Three charges that Defendants conspired *with each other* to aid and abet a government agent; it does not charge Defendants solely with conspiring with a government agent. Therefore, *Arbane* is inapplicable.

Defendants' arguments in support of their motion to dismiss Counts 4 and 5 are similarly unavailing. In the first place, Defendants are charged in those counts with aiding and abetting Griff in *attempting* to possess with intent to distribute, not, as Defendant Guerrero appears to assert, with aiding and abetting him in *possessing* with intent to distribute. "This circuit has long held that to convict a defendant of the crime of attempt, the government need only prove '(1) the defendant was acting with the kind of culpability otherwise required for the

17

commission of the crime for which he is charged with attempting; and (2) the defendant was engaged in conduct that constitutes a substantial step toward the commission of the crime.' " *United States v. Root*, 296 F.3d 1222, 1227-28 (11th Cir. 2002) (quoting *United States v. Carothers*, 121 F.3d 659, 661 (11th Cir. 1997)).  Thus, the fact that Griff was an undercover agent, and the "cocaine" was fake are irrelevant to whether Defendants' actions and conduct can satisfy the elements the Government must prove for the crime of attempt.  *See, e.g.*, *Root*, 296 F.3d at 1228-29 (affirming defendant's conviction for attempting to persuade a minor to engage in a sex act, even though alleged minor was an undercover agent, where the evidence showed that the defendant believed he was communicating with a minor).

Furthermore, in *United States v. Hornaday*, 392 F.3d 1306 (11th Cir. 2004), the court rejected the defendant's argument, similar to that made here, that he could not be convicted for "aiding and abetting an undercover agent who could not himself be held responsible for the crime" because the agent lacked the requisite intent.  *Id.* at 1312.  The court conceded that "[i]t is plausible to read" the first subsection of the aiding and abetting statute, i.e., 18 U.S.C. § 2(a), "as including a requirement that someone other than the defendant be guilty of the crime which the defendant aids and abets."  *Id.*  But the court went on: "The same cannot be said,

18

however, about the language in the second subsection," i.e., 18 U.S.C. § 2(b),

which:

> fits, and is obviously designed for, the situation in which a defendant
> with the requisite intent to commit a crime gets someone else to act in
> a way necessary to bring about the crime, even if that other person is
> innocent.  Or to put it another way, the defendant supplies the intent
> and maybe another element or two while getting someone else to
> supply at least one additional element that is necessary to the
> commission of the crime.  That someone else may be an undercover
> law enforcement officer or an entirely innocent third person.

*Id.* at 1313; *see also United States v. Delgado*, 56 F.3d 1357, 1366 (11th Cir. 1995)

(explaining that "[t]his Circuit long ago settled the question whether a government

assisted or accomplished importation is an innocent act that prevents a defendant

from being guilty of the crime as an aider and abetter.  We held it is not an

innocent act, and the defendant may be found guilty as an aider and abetter" (citing

*Haynes v. United States*, 319 F.2d 620 (5th Cir. 1963)[3]); *Haynes*, 319 F.2d at 621-

22 (rejecting the defendants' argument that, because it was not unlawful for

government agents to bring marijuana into the country, they could not have

violated the smuggling or transferee statutes).  Thus, it is clear that there are

circumstances where a person can be convicted for aiding and abetting a

government agent.  Whether those circumstances exist in this case appears to

---

[3] Decisions of the Fifth Circuit handed down before Oct. 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

19

require a consideration of the sufficiency of the evidence to support this theory, which the Court cannot currently undertake. *See Salgado*, 2012 U.S. Dist. LEXIS 81502, at \*8.  Therefore, the undersigned cannot find at this point that, as a matter of law, Counts Four and Five fail to allege a crime against Defendants, or that the Government cannot prove all of the elements of Counts Four and Five.

Accordingly, it is **RECOMMENDED** that Defendants' motions to dismiss the Superseding Indictment for failure to charge a crime against them be **DENIED**.

### Summary

It is **RECOMMENDED** that Defendants' motions to dismiss (Docs. 216, 241, 246) be **DENIED**.

**IT IS SO REPORTED AND RECOMMENDED** this  8th  day of   May  , 2013.

 /s/  *J. CLAY FULLER*
J. CLAY FULLER
United States Magistrate Judge